UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

HAROLD H. TEMPLE                             CIVIL ACTION NO. 10-cv-1415

VERSUS

MARSHA PAUL McCALL, ET AL          MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

**Introduction**

Harold H. Temple filed this declaratory judgment action to resolve ownership of a mineral servitude on 14.982 acres in Sabine Parish, Louisiana. He named as defendants five landowners who (collectively) have a competing claim. The case is based primarily on the relevant conveyance records, which the parties have submitted into evidence. The court also heard testimony at a bench trial from Plaintiff and two title examiners. For the reasons that follow, a judgment will be entered in favor of defendants.

**Relevant Facts**

The disputed acreage was originally part of a larger tract of land owned by Elizabeth Paul Jenkins and T. J. Paul, Jr. In 1965, they sold several tracts, totaling about 185 acres, to the Sabine River Authority ("SRA"), State of Louisiana, for use in the development of the Toledo Bend Reservoir. One tract, identified in the Cash Sale instrument (Exhibit 1) as Tract No. 4214, was 35.89 acres carved from a 40-acre tract. It was described as part of the Southwest Quarter of the Northwest Quarter, Section 11, T 9 N, R 14 W, Sabine Parish. Mr.

Paul and Mrs. Jenkins specifically reserved the mineral rights for the part that they sold, as follows:

> There is especially excepted from the sale or conveyance herein made, and reserved to the vendors, in perpetuity, all of the oil, gas and other minerals in, on and under said lands, and that may be produced from said lands ... .

A mineral sale or reservation does not create a separate mineral estate, but only a right in the nature of a servitude that allows the holder to go on the land of another to explore for, produce, and reduce to possession the underlying minerals. Horton v. Mobley, 578 So.2d 977, 983 (La. App. 2d Cir. 1991). A mineral servitude is ordinarily subject to the prescription of nonuse of ten years. Neumin Production Co. v. Tiger Bend, Ltd., 58 So.3d 1088, 1091 (La. App. 3d Cir. 2011). The parties agree that the Paul-Jenkins reservation of the mineral rights in perpetuity was allowed because La. R.S. 31:149 suspends the running of the prescription of nonuse against a mineral interest reserved by a person when the land is acquired by the State or any subdivision or agency (such as the SRA).  After this transaction, Mrs. Jenkins and Mr. Paul co-owned about 4.11 acres of land in Section 11 and held a mineral servitude on the other 35.89 acres (which was owned by the SRA).

A few months later, in 1965, Mrs. Jenkins and Mr. Paul executed an Exchange Deed that involved several tracts of property.  Mrs. Jenkins conveyed to Mr. Paul "all of her right, title and interest in and to" various tracts of property, including "SW¼ of NW¼ LESS AND EXCEPT that part conveyed to Sabine River Authority, State of Louisiana," by the earlier Cash Sale. See Exchange Deed at Exhibit 2 and Act of Correction at Exhibit 3.

Mr. Paul, in 1969, executed a Credit Deed (Exhibit 4) by which he conveyed property to R. V. Woods and Lamar Haddox. This lawsuit is based on competing interpretations of the instrument and whether it conveyed to the buyers Mr. Paul's mineral servitude over a part of the 35.89-acre tract owned by the SRA. The deed stated that Mr. Paul did "by these presents, Grant, Bargain, Sell, Convey and Deliver with full guaranty of title, and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors of the property presently conveyed unto" Mr. Woods and Mr. Haddox the following described property:

> All that part lying West and South of the Public Road #143 or sometimes #174 of the Southwest Quarter of the Northwest Quarter of Section 11, Township 9 North, Range 14 West, LESS portion sold to Sabine River Authority, plus the lease portion of lease back on lands so sold pertaining to act herein conveyed.

Mr. Haddox later acquired the interest of his co-owner Mr. Woods. The property then passed to the heirs of Mr. Haddox. In March 2000, the Haddox heirs issued a Cash Sale Deed to plaintiff, Harold H. Temple. The instrument used the identical legal description that was used in the 1969 conveyance from Mr. Paul to Woods-Haddox. Exhibit 7.

A map (Ex. 10) indicates that there are two, small, noncontiguous parcels of land in Section 11 that are southwest of the public road and are not part of the SRA Toledo Bend property. Mr. Temple testified that the two parcels total about 1.5 acres. This is the only property in the section over which he claims "fee" ownership. He testified that mineral rights were not, at the time of his purchase, the hot issue they became a few years later when the

Haynesville Shale gas exploration began, so they were not of much concern during the transaction. Mineral rights in the area have since become quite valuable.

**Analysis**

Mr. Temple takes the position that the 1969 deed from Mr. Paul to Mr. Woods and Mr. Haddox transferred a mineral servitude on 14.982 acres contained in Section 11, which acreage was sold to the SRA in 1965. Mr. Temple contends that those mineral interests passed to him when the Haddox heirs sold him property by a deed that used the same legal description. Temple focuses on the "all rights" language in the deed from Mr. Paul to Woods-Haddox that sold "with complete transfer and subrogation of *all rights* and actions of warranty against all former proprietors of the property" that is described as that part of a quarter-quarter of Section 11 that lies southwest of Public Road No. 143, "less portion sold to Sabine River Authority ...." (Emphasis added.) Mr. Temple reasons that Mr. Paul sold the entirety of what he owned in the area, less what he had already sold to the SRA (which he did not own and could not sell). The mineral rights at issue, he points out, were not sold to the SRA, so he contends the "less" provision that carves out the SRA property does not reference the mineral rights because they were not sold to the SRA. He adds that Mr. Paul did not include any language to expressly reserve any minerals.

Defendants respond that the property description at issue refers to surface area of land. Mr. Paul, they contend, sold land described as "[a]ll that part [of Section 11] lying west and south of the public road ... ." He then subtracted from that broad description the portion of that land already conveyed to the SRA, by using the "LESS portion sold to [SRA]" clause.

They reason that because the SRA portion was excluded from the property described, any mineral rights or other rights Mr. Paul owned on that land were likewise excluded.

The parties base their arguments on their suggested interpretation of the act, together with testimony from the title examiners about custom and usage in property descriptions. The only caselaw that has been offered as particularly relevant is Sheridan v. Cassel, 70 So.3d 89 (La. App. 3d Cir. 2011), writ denied, 71 So.3d 317 (La.). Mr. Temple contends that the case addresses the exact issue presented in this case and compels its resolution in his favor. Defendants respond that the facts are distinguishable and, alternatively, the decision is not binding on this court.

The majority decision in Sheridan does not provide much detail about the facts and transactions underlying the dispute, but the dissent describes the facts in some detail and must be drawn upon to understand the context of the decision. Mr. Cassel owned an 80-acre tract in Section 35 in Sabine Parish. In 1966, Cassel sold to the SRA a 3.27-acre tract that was carved from the 80 acres. Cassel expressly reserved in perpetuity the right to explore for minerals under the 3.27-acre tract.

Cassel later sold to Gertrude Ray property described as a certain half of a quarter in Section 35, "containing 80 acres, more or less," plus improvements. The act of sale did not exclude from the described 80 acres the 3.27-acre tract that Cassel had sold three years earlier to the SRA.

Gertrude Ray later died. The judgment of possession in her succession recognized Cassel as owning an undivided one-half interest of a usufruct over a 77-acre tract and

recognized Carolyn Sheridan as the naked owner of the property that was described in the judgment as the half of a quarter of Section 35, less a 3.27-acre tract.

Prior to the completion of the succession, Cassel had signed a quitclaim deed to Sheridan of all of his interest, including the usufruct in and to certain properties, which included a description of the portion of Section 35, less the 3.27-acre tract, containing 77 acres. Cassel also executed an assignment to Sheridan of "all of my right, title, claim and interest, real and personal, in and to the "Estate of Gertrude C. Ray, deceased ... ."

The lawsuit focused on whether Mr. Cassel retained the mineral interest over the 3.27-acre tract or whether he had sold it to Ms. Ray. If he had sold the mineral interest to Ms. Ray, the later transactions would put the mineral interest in the hands of Ms. Sheridan.

The cash sale from Mr. Cassel to Ms. Ray, similar to the primary instrument in this case, declared that Cassel did "Grant, Bargain, Sell, and Convey and Deliver with full guarantee of title, and with complete transfer and subrogation of all rights and actions of warrant against all former proprietors of the property herein conveyed" to Ms. Ray, the East Half of the Southeast Quarter of Section 35, containing 80 acres, more or less, plus improvements. The trial judge reasoned that Cassel conveyed "all rights" to the tract, which included his mineral interest on the 3.27 acres. The majority of the appellate court agreed and affirmed the decision. The dissenting judge reasoned that Cassel's sale to Ms. Ray did not and could not include either the 3.27-acre tract or the separate and distinct mineral servitude in favor of Cassel over that 3.27-acre tract.

The undersigned does not agree with the construction given by the <u>Sheridan</u> majority and Mr. Temple to the "all rights" phrase found in instruments at issue in this case. The language, or a similar variation, is commonly encountered in Louisiana instruments. The seller conveys with full guaranty of title, and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors, certain described property. The seller may be selling all of his rights in the property, but it is not necessarily because of the "all rights" language in that provision. That language is more accurately read to convey to the buyer all of the seller's rights and actions of warranty against the seller's predecessors in title. Louisiana instruments sometimes describe the property being conveyed as "all of my right, title, and interest in and to" a described tract. That "rights" language would encompass any mineral rights the seller had in connection with the described tract, but the rights language in the warranty clause does not.

The court finds that the defendants offer the legally and grammatically correct interpretation of the Paul Credit Deed. The parties have not identified a decision from the Supreme Court of Louisiana that would provide guidance in this case. It appears the nearest decision is <u>Sheridan</u>, and neither the majority nor dissenting opinion cited any other Louisiana decisions that addressed a factually similar dispute. In making an <u>Erie</u> guess in the absence of a ruling from the state's highest court, the intermediate appellate courts serve as "a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." <u>Howe ex rel Howe v. Scottsdale Ins. Co.</u>, 204 F.3d 624, 627 (5th Cir. 2000).

The undersigned is persuaded that the dissenting opinion in <u>Sheridan</u> and the arguments by defendants have more logical force and are more indicative of how the Supreme Court of Louisiana would resolve the dispute. Mr. Paul's sale to Woods-Haddox did not convey any mineral interest he had with respect to the SRA property. Mr. Temple, therefore, did not acquire those mineral interests when he purchased from the Haddox heirs. He acquired only the ownership of the approximately 1.5 acres that fell within the description.

Counsel are directed to confer and draft a proposed judgment consistent with this ruling and submit it to the court within 21 days. The time allowed for filing any notice of appeal will not commence until a judgment is actually entered.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 25th day of May, 2012.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE